*988 OPINION OF THE COURT
McKEE, Circuit Judge.
Beryl Bray appeals from the district court’s grant of summary judgment in favor of the Marriott Hotel Corporation. Bray filed suit in the district court for the District of New Jersey alleging race discrimination under Title VII of the Civil Rights Act of 1964 (“Title VII”), as amended, 42 U.S.C.A. §§ 2000e to 2000e-17 (1981 & Supp.1994) and the New Jersey Law Against Discrimination (“NJLAD”), N.J.S.A. § 10:5-12(d). For the reasons that follow, we will reverse and remand for further proceedings consistent with this opinion.
I.
Bray, an African-American female, was hired as a room attendant at the New York Marquis Marriott in 1985. App. at 99a. Within eight months, she was promoted to Assistant Housekeeping Manager, and, two years later, she was promoted to Housekeeping Manager at the Park Ridge Marriott in New Jersey. App. at 100a-02a. In early 1993, Park Ridge initiated a “posting” for the position of Director of Services. “Posting” is the process by which employees within Marriott who are qualified for an available position within the company make known their desire to be considered for that position. Any associate who satisfies the minimum requirements for the job has the opportunity to have his or her name submitted or “posted” for the available position. An associate cannot post for a job if he or she is not qualified for that position.
Bray posted for the position of Director of Services which had been vacated by her former supervisor, Richard Lesser. App. at" 109a-10a. Between seven and nine other candidates also posted for that position. App. at 225a. In his deposition, Leo Nemetz, the General Manager at the Park Ridge Marriott Hotel, explained that he conferred with George Joosten, the Director of Operations, and Robert Steussy, the Director of Human Resources, as to the qualifications of the various candidates.[1] App. at 227a-28a.
Nemetz testified that he initially ranked the candidates by their PAF scores,[2] but all of the criteria set forth in Marriott’s Center Management System Career Planning Guidelines Policy for the Career Planning Process (“MCMS”) were considered in deciding which one candidate would be interviewed. The MCMS sets forth the following considerations to be employed in ranking candidates for a position:
EXPERIENCE
* Compare each candidates relevant work experience both pre- and post-Marriott.
* What experience level does the position require?
PAF RATING
* Does one candidate have a higher PAF rating than another?
* Evaluate the candidate’s MDA [Management Development Assessment] or SDA [Supervisor Development Assessment] (if available) along with the skill requirements of the position.
TRAINING AND EDUCATION
* Does the position require extensive or specialized training (e.g., culinary, revenue management, information systems)?
* Does the candidate have the necessary training and education?
RELOCATION
* Cost of Relocation for each candidate in relation to budget.
* Input of Regional Team or senior management, i.e., Regional or Senior Vice President if house move is involved.
SALARY
* Comparison of candidate’s salary in relation to the hotel’s, staff department or support operation’s budget.
* Importance of position salary budget vs. candidate’s salary.
*989 App. at 43a. Nemetz farther stated in his deposition that all three individuals who participated in the meeting unanimously agreed that Therese Riehle, who is White and had been working at a different Marriott hotel, would be interviewed as the top candidate. App. at 231a-32a. Riehle was hired effective April 10, 1993. App. at 50a. According to Nemetz, the principal reason for promoting Riehle was that she had the highest PAF rating, app. at 230a, 235a, but he insisted that all of the factors in the MCMS were considered.
Riehle had begun working for Marriott in May 1988 as a co-op student. App. at 69a In 1989, she accepted a position as an Assistant Housekeeping Manager at the New York Marquis Marriott and, in 1991, she became the Assistant Director of Services there. App. at 74a. Riehle’s Associate Profile[3] reflects that she possessed an occupational grade level of 45 (indicating she supervised managers), had a degree in Restaurant and Hotel Management, app. at 68a, and had received two “Manager of the Month” awards while at the Marquis, app. at 76a-77a. Riehle was interviewed for the promotion, and, during that interview, Nemetz learned that she had experience overseeing renovations (called “re-dos”) which the Park Ridge was soon scheduled to undergo. App. at 236a. Riehle had also attended over forty training sessions.[4] App. at 52a-53a.
Bray had PAF ratings of “2” in each of the three years reported in her Associate Profile (1990, 1991, and 1992). App. at 54a. Since Bray was at a smaller hotel than Riehle, Bray only supervised associates and accordingly she was assigned a lower occupational grade level than Riehle, “43.” App. at 55a. Bray had attended thirteen training sessions over her eight-year period with Marriott, and her college degree was in English and History. App. at 54a, 56a.
Bray did not receive the promotion. Instead, Riehle was offered the position. Bray claimed that she had been denied the promotion to Director of Services because she was Black and then filed this suit against Marriott under Title VII. Following discovery, the district court granted summary judgment against Bray and in favor of Marriott, and this appeal followed.
Discussion
II.
We have jurisdiction pursuant to 28 U.S.C. § 1291 to review the final order of the district court, which exercised jurisdiction under 42 U.S.C. § 2000e et seq. and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).
On review of a district court’s grant of summary judgment, we apply the same test the district court should have applied initially. Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir.), cert. denied, — U.S.-, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995). Summary judgment is appropriate only when the admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e). When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party’s evidence is insufficient to carry that burden. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The nonmoving party creates a genuine issue of material fact if he or she provides sufficient evidence to allow a reasonable jury to find for him or her at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences. Sempier, 45 F.3d at 727; Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413 (3d Cir.1991).
III.
In a case of failure to promote under Title VII, the plaintiff must carry the initial bur *990 den of establishing a prima facie case of unlawful discrimination. Thus, the plaintiff must establish that he or she
(1) belongs to a protected category;
(2) applied for and was qualified for a job in an available position; •
(3) was rejected;
(4) and, after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiffs qualifications for the position.
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).[5]
If the plaintiff fulfills these elements, the burden of production then shifts to the defendant to “ ‘articulate some legitimate, nondiscriminatory reason for the employee’s rejection.’ ” Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994) (quoting McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824); see also Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061 (3d Cir.1996)(en banc).
The employer must then come forth with evidence, which, if taken as true, demonstrates that there was a nondiscriminatory reason for the decision not to promote the plaintiff. See id. at 1066. This reason need not be proven to be the reason the plaintiff failed to receive the promotion because the burden of proving the actual discrimination lies at all times with the plaintiff. If the employer satisfies its burden of production, then the plaintiff must produce evidence from which a reasonable factfinder could conclude either that the defendant’s proffered justifications are not worthy of credence or that the true reason for the employer’s act was discrimination. The plaintiff must:
demonstrate such weaknesses, implausibilities, inconsistencies, incohereneies, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable factfinder could rationally find them “unworthy of credence” and hence infer “that the employer did not act for [the asserted] nondiscriminatory reasons.”
Fuentes, 32 F.3d at 765 (citation omitted). Otherwise, the employer is entitled to judgment as a matter of law.
An inference of pretext may arise if the plaintiff can raise suspicions with respect to the defendant’s credibility or the employer’s treatment of the employee. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638-39 (3d Cir.1993). The inference, along with the components of the plaintiff’s prima facie ease, allow a jury to conclude that the employer was actually motivated by illegal bias, but it does not compel that result. See Sheridan, 100 F.3d at 1066-67. Moreover, the plaintiff cannot prevail under Title YII merely by establishing that the employer made a decision that was wrong or mistaken. Fuentes, 32 F.3d at 765.
“Summary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law. A dispute regarding a material fact is genuine ‘if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.’ ” Josey, 996 F.2d at 637 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)) (emphasis added).
A.
The district court ruled that Bray had established a prima facie case of discrimination, and Marriott does not appeal that ruling. Marriott offered evidence of a nondiscriminatory reason for its selection of Riehle to rebut the presumption of discrimination created by Bray’s prima facie case. Marriott asserted that Riehle was the best applicant for the position and pointed to a host of factors to support its contention. Riehle had a higher PAF score, and, although Bray had been at Marriott longer, it contended that Riehle’s experience was superior as reflected *991 by her higher occupational grade level (45 as compared to Bray’s 43) and her supervision of five managers. Marriott also noted that Riehle’s prior experience with renovations was an added reason for preferring her to Bray because renovations were due to begin at the Park Ridge. That experience, however, is of limited assistance to our analysis because Nemetz testified that Riehle’s experience with re-dos did not factor into the rankings. Dist.Ct.Op. at 19. Moreover, there is evidence that suggests that Marriott did not learn of this experience until Riehle’s interview, and Bray contends that the discrimination occurred when Marriott decided to deny her the promotion and interview Riehle. See Appellant Br. at 19-20. Marriott also pointed to the fact that Riehle had attended far more seminars and training sessions than Bray to support its contention that Riehle was the better candidate.
B.
We begin by focusing on the dispute over whether Bray was ever interviewed for the promotion and Nemetz’s testimony regarding her qualifications for that promotion. In doing so, however, we stress that it is the totality of the evidence that must guide our analysis rather than the strength of each individual argument. The dissent carefully explains each of the discrepancies in this record in isolation and concludes that none of them creates a material issue of fact. See Dissenting Op. at 1000-02. We have previously noted that such an analysis is improper in a discrimination case:
A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.
Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir.1990). Thus, we must determine whether the totality of the evidence would allow a reasonable factfinder to conclude that Bray has established the alleged bias.
The issue of Bray’s interview was hotly contested before the district court, but Marriott conceded this issue for purposes of its legal argument on summary judgment.. Given that concession, the district court assumed that George Joosten, the Director of Operations, did afford Bray a luncheon interview for the promotion. The dispute over that interview is, however, significant to our analysis and worthy of discussion.
Marriott’s MCMS sets forth the procedure and criteria for promotions within Marriott. In addition to outlining the criteria by which applicants for promotions are screened, it states that initially only one candidate should be interviewed.
Upon conclusion of screening the candidates, only one may be chosen to interview in person with the hiring manager. This is determined by using all available information as augmented by the screening process to re-rank the candidates. After the in-person interview, the hiring manager must decide whether to hire that candidate before conducting subsequent interviews.
App. at 44a.
Bray insists that, during her interview, Joosten told her she was the leading candidate and that her first decision after she was officially promoted would be hiring a new housekeeping manager to fill the vacancy that her promotion would create. See app. at 328a. Leo Nemetz, the General Manager of the Park Ridge Hotel, testified in his deposition that Joosten told him there had been no interview and that Bray’s lunch with Joosten was nothing more than an opportunity for Joosten to become acquainted with Bray. App. at 233a-34a. Richard. Lesser, Bray’s supervisor, stated in his affidavit: “I have been advised that there is a question as to whether or not George Jooston set up an interview with Beryl Bray for the position of director of services. This interview was set up in my presence.” App. at 325a. We must take as fact that Bray was interviewed for the promotion. Under Marriott’s policy, this would mean that she was then considered the number one candidate for the position. Therefore, before Marriott could conduct subsequent interviews of other candidates, it had to decide whether to promote Bray. But Bray did not learn that she had been denied the position until after Joosten told her that *992 Therese Riehle had been interviewed and offered the position of Director of Services. App. at 131a. Yet, Nemetz testified that no candidates were interviewed until after they had been ranked, that they were ranked first by their PAF scores, and that only Riehle was interviewed because she was the top candidate for the position under that ranking. App. at 228a-31a.
It is possible that Joosten interviewed Bray outside the formal decision-making process and that the result of that interview (or even the fact of it) was never shared with Nemetz or others responsible for selecting Lesser’s successor. It is also possible that Bray’s interview was not favorable and that Riehle was then interviewed based upon her PAF scores and experience. However, there is no testimony to support either conjecture, and, even if there were, it would be up to a jury to reconcile the conflicting testimony surrounding Bray’s interview and the ranking of candidates.
The dispute over Bray’s ranking is particularly relevant to our Title VII analysis because of Nemetz’s discredited belief that Bray was not even qualified for the promotion. The following exchange occurred during Nemetz’s deposition:
Q: Did you think that Beryl Bray was qualified to be the director of services at the Park Ridge Marriott?
A: I can’t answer that question because I just didn’t go into anything other than use the — the ranking.
Q: I’m not asking if you thought— Therese Riehle was the best____ I’m asking you if you thought Beryl Bray was qualified to be the director of services____
A: No, I didn’t.
Q: Can you tell me why not?
A: I thought she was an excellent employee who was a maintainer. If I thought she was capable of doing the job, I may have given it to her. But I was looking for the best qualified candidate.
App. at 262a-63a (emphasis added). A fact-finder should determine why Nemetz felt that Bray was not qualified or “capable of doing the job.” Since she established a pri-ma facie case under Title VII, the factfinder could conclude that Nemetz’s erroneous view of her ability was the result of illegal bias. See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067-68 (3d Cir.1996) (en banc) (the factfinder can conclude from a rejection of an employer’s proffered explanation and a plaintiffs prima facie case that bias was the actual reason a Title VII plaintiff was not promoted).
Nemetz then retreated from his position that Bray was not “capable of doing the job,” and his attorney reminded him that Bray could not have posted for the position had she not been qualified.
Q: So it was your opinion that Beryl Bray was not qualified to be director of services ... ?
A: No, it was not my—
A: ' I should — she was not — let me think. I used the ranking. I used the ranking of—
[Interruption by Counsel for Marriott]: I’ll just object to the question because of Marriott’s policy that you can’t even post unless you’re qualified for the position.
App. at 263a. The dissent chooses to interpret this as merely Nemetz’s inarticulate statement that he was seeking the “best” candidate, and that Bray, though qualified, was not the “best qualified” candidate. See Dissenting Op. at 1001. A factfinder may well agree with that interpretation, but that is not for us to decide.
Further doubt is cast upon the selection process by Nemetz’s testimony that Riehle was unanimously selected the number one candidate.. App. at 232a. He later explained that Joosten had not given any input.
[Joosten] sat in the room with us. When we said — I did ask. No one said anything. No one had any disapprovals so I said to Bob Stucey, let’s go ahead and set her up and George said I prefer staying out of this.
App. at 259a (emphasis added). After Riehle was hired, Joosten told Bray:
You are both equally qualified. You had the experience. She had the rating of a one. And since you were — since you had *993 been there for a while we thought it wouldn’t be an incentive for you.
App. at 130a-31a.
“An employer can act only through individual supervisors and employees; discrimination is rarely carried out pursuant to a formal vote of a corporation’s board of directors.” Mentor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 75, 106 S.Ct. 2399, 2409, 91 L.Ed.2d 49 (1986).
The distinct method of proof in employment discrimination cases, relying on presumptions and shifting burdens of articulation and production, arose out of the Supreme Court’s recognition that direct evidence of an employer’s motivation will often be unavailable or difficult to acquire.
Sheridan, 100 F.3d at 1071. Therefore, “[a] plaintiff is not required to produce evidence which necessarily leads to the conclusion ‘that the employer did not act for nondiscriminatory reasons.’” Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.), cert. denied, — U.S. -, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).
A reasonable jury could conclude from Nemetz’s concededly inaccurate assessment of Bray that the decision to reject her and interview Riehle was driven by racial bias and not by the' explanations offered by Marriott. See Sheridan, 100 F.3d at 1067-68 (“[T]he elements of the prima facie case and disbelief of the defendant’s proffered reasons are the threshold findings, beyond which the jury is permitted, but not required, to draw an inference leading it to conclude that there was intentional discrimination.”). A reasonable jury could also conclude that Nemetz’s apparent belief that Bray was “more of a maintainer” was based upon racial bias. See id.
If Nemetz’s assessment of Bray was racially biased, his interpretation of the purportedly objective criteria he relied upon to hire Riehle would not insulate Marriott’s employment decision from that taint. See, e.g., Hampton v. Borough of Tinton Falls Police Dep’t, 98 F.3d 107, 113 (3d Cir.1996) (reversing summary judgment in favor of employer where “district court either ignored several discrepancies in the evaluation process, or failed to give all reasonable inferences arising therefrom [to the plaintiff]”). Although Steussy and Joosten were also involved in the hiring process, it is apparent on this record that Nemetz was the key de-cisionmaker. He was in charge of the Park Ridge Marriott, and both Joosten and Steus-sy reported to him. See app. at 200a, 258a. Furthermore, although there is conflicting testimony as to the role Joosten played, it appears that he refrained from direct participation in the decision to promote Riehle because he had a prior connection to the hotel where she previously worked. Appel-lee Br. at 24; app. at 258a-59a. Therefore, it is particularly relevant to our decision whether there are discrepancies in how Nemetz evaluated the criteria he purportedly relied upon to rank the applicants and select Riehle. And we conclude that there were.
The dissent argues, however, that none of the evidentiary discrepancies would allow a reasonable jury to doubt Marriott’s proffered explanation that it was looking for “the best” candidate and that, therefore, Bray cannot prevail under Fuentes or Sheridan. Dissenting Op. at 10. We do not believe that Title VII analysis is so tightly constricted. This statute must not be applied in a manner that ignores the sad reality that racial animus can all too easily warp an individual’s perspective to the point that he or she never considers the member of a protected class the “best” candidate regardless of that person’s credentials. The dissent’s position would immunize an employer from the reach of Title VII if the employer’s belief that it had selected the “best” candidate, was the result of conscious racial bias. Thus, the issue here, is not merely whether Marriott was seeking the “best” candidate but whether a reasonable factfinder could conclude that Bray was not deemed the best because she is Black. Indeed, Title VII would be eviscerated if our analysis were to halt where the dissent suggests.
With this as our starting point, we examine the reasons that Marriott proffered to justify its promotion of Riehle over Bray.
*994 1. PAF ratings
Nemetz testified that each applicant’s PAF scores played,a major role in determining who was the top candidate. Similarly, the district court concluded that the decision to promote Riehle was based in large part upon the PAF scores in each applicant’s job profile and that these objective scores were a nondiscriminatory explanation for why Riehle was picked over Bray. Riehle had PAF scores of “1”, “1”, and “2” for each of her prior evaluations. All three of Bray’s most recent scores, on the other hand, were “2s.” Nemetz was aware that Riehle’s most recent PAF was “1”, but he was unable to recall at deposition the two earlier evaluations. App. at 231a. However, the record raises an issue of fact as to the timing of Riehle’s most recent rating.
Although Riehle’s first two evaluations were a year apart (11/16/91 and 11/14/92), her most recent evaluation — the one that Nemetz recalled — was only six months after the previous evaluation.[6] On the other hand, all of Bray’s evaluations were approximately one year apart (9/22/90, 9/18/91, and 9/21/92). At oral argument, Marriott’s counsel was asked why Riehle received a “semi-annual” evaluation in what appeared to be an annual review process when all of her prior evaluations and Bray’s evaluations had been annual. He could offer no explanation. A factfinder should determine if Riehle was given an evaluation out of the normal sequence and, if so, why.
This record suggests that Riehle officially began as Director of Services on April 10, 1993,[7] the same date that she was given an evaluation of “1” for that position. Since Riehle’s PAF was updated in June 1993, it is conceivable that the rating of “1” was given at that time to reflect her performance in her new position. However, that is not consistent with Nemetz’s testimony. Nemetz was deposed in November of 1994 and testified that Riehle was then due for an evaluation but that she had not yet been evaluated.[8] Absent further explanation, a reasonable jury could conclude that Riehle was evaluated out of normal sequence in order to bolster her selection after Bray had been interviewed. See, e.g., Hampton v. Borough of Tinton Falls Police Dep’t, 98 F.3d 107, 114 (3d Cir.1996) (where Board’s policy of considering the past three years’ evaluations allowed it to consider three evaluations of the White candidate who had received annual evaluations but six evaluations of the Black candidate who was evaluated semiannually, a factfinder must determine whether application of that policy was due to racial bias).
The district court noted that
Ms. Riehle had received the top performance evaluation for her work with Marriott during the previous two years, receiving a “1” for her PAF rating. Plaintiff, on the other hand, had never received a rating above “2” during the previous three years. Thus, the most objective criteria clearly pointed to Ms. Riehle as the superi- or candidate.
Dist.Ct.Op. at 13-14. However, this record only reveals two scores prior to the time Riehle was interviewed. One was a “1,” but the other was a “2.”[9] Therefore, on half of *995 the two most recent evaluations prior to her promotion, Riehle did not do as well as she could have. On the other hand, there is evidence that Bray’s former supervisor, Richard Lesser, never gave anything higher than a “2” so that Bray received the highest possible grade for each of the three evaluations in her employment profile. Lesser stated in his affidavit: “During my tenure as director of services, I had never given a PAF rating higher than a two to any manager that I was responsible to review.” App. at 325a. The district court correctly noted that Lesser did not state that Bray would have received a “1” but for this policy and that Marriott was entitled to rely upon Riehle’s higher score even if Bray’s lower score resulted only from Lesser’s individual grading practice. See Dist.Ct.Op. at 13-14 n. 13. However, that does not answer whether Nemetz’s failure to recognize that Bray had received the highest grade available was the result of a biased belief that she was not qualified rather than an objective evaluation of the PAF scores of both candidates. The district court also noted that Bray produced no evidence that anyone involved in the promotion knew that Lesser never awarded “Is.” Dist.Ct.Op. at 13-14 n. 13. Furthermore, Nemetz disputed whether Lesser ever gave a “1” and testified that he thought he recalled Lesser telling him that he had given a “1” to an employee on an evaluation. Dist.Ct.Op. at 13-14 n. 13. Although there is a dispute about whether Lesser ever gave a “1,” there is no dispute that he thought Bray should have been promoted. Lesser testified that he told Joosten that Bray was qualified for the promotion: “In my opinion, which I let known to Mr. Jooston and which Mr. Jooston was aware of, Beryl was more than qualified to take over my position as director of services at the Park Ridge Marriott. To this day, I cannot understand why she was not offered the position.” App. at 325a-26a. We realize, of course, that Lesser never saw Riehle’s application and may have thought her better qualified than Bray had he done so. However, that is not the point. There are enough disputed facts on this record concerning Bray’s qualifications, the accuracy of Riehle’s PAF scores, and Nemetz’s view of Bray’s ability to allow Bray to survive summary judgment.
2. Experience
Bray argues that experience is the most important factor in promoting within Marriott and points to the fact that it is first among the criteria on the MCMS.[10] Marriott argues that experience is one of many factors to be considered and that there is no particular order to the criteria that are evaluated. The parties also argue about which applicant had the superior experience and how different types of experience should be valued. The district court agreed with Marriott that Riehle’s experience was superior to Bray’s. The court noted
although Mr. Nemetz did not testify as to these subjects ... this court notes that Ms. Riehle’s educational background included a degree in Restaurant Hotel Management, ... while plaintiffs college degree encompassed the fields of English and History____ Further, ... Ms. Riehle was twice awarded a “Manager of the Month” award ... while plaintiff has pointed to no analogous awards.
Dist. Ct. Op. at 6 n. 8. However, if management did not consider these factors in evaluating the experience of the two candidates, the factors should not have been considered by the district court. The issue is not whether the court can find a legitimate reason why Marriott could have promoted Riehle but whether Marriott had a legitimate reason that was not the result of racial animus. “[T]he judge’s function is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial. The district court cannot decide issues of fact at the summary judgment stage.” Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir.1993) (citation omitted).
Nemetz testified that, in ranking candidates, the first thing he looks at “is the latest rating that they received at their hotel.” *996 App. at 215a. When asked whether placing primacy on the PAF rating is a policy of Marriott, Nemetz acknowledged that it was “[n]ot a policy of anybody’s. It’s just if you’re going to go for the best candidate, generally you do that by looking at a rating.” App. at 215a. Bray, on the other hand, contends that “[i]t was common knowledge at the Marriott that experience was the number one criteria in deciding promotions.” App. at 329a. While her belief alone is insufficient to raise an issue of material fact, see Fuentes v. Perskie, 32- F.3d 759, 766 (3d Cir.1994)(the “not so” approach “does not create a material issue of fact”), it takes on added significance when combined with that fact that “[experience] is the first criteria listed in the pamphlet provided for by the defendant, MCMS.” App. at 329a-30a. The MCMS lists in the following order factors that should be considered in ranking candidates for a promotion: experience, PAF rating, training and education, relocation, and salary. Marriott suggests that this list is not in order of importance because it is preceded by the statement “The following are additional considerations to help rank the order of candidates.” See Appellee Br. at 30; app. at 43a. Marriott may be correct. However, the order does suggest a certain priority. For example, it is implausible that Marriott intended relocation and salary considerations to outweigh or be given equal consideration with such factors as experience and the PAF rating. Thus, “Salary” and “Relocation” are listed last. Moreover, in the MCMS, this list of additional considerations is immediately preceded by the requirements of posting, the primary of which appears to be experience:
Any associate who meets or exceeds the following minimum requirements for a job showing on the Job Availability Report will have the opportunity to have their name submitted (posted) should they wish to apply for the job:
a. Associate has spent at least 18 months in current position (Operations Supervisors and Managers only),
OR
b. Promotion eligibility date in MCMS indicates the associate is ready for promotion prior to 18 months in position,
AND
c. Associate has a 1 or 2 on last PAF rating....
AND
d. Associate satisfies the minimum objective requirements for the position applied for as noted on the job profile in the Career Planning Profile Guide, and the applied for position is listed as one of the “possible next qualified positions” in the associate’s MCMS' profile.
App. at 42a. A jury should determine whether there is any significance to the order of the factors in the MCMS, and, if so, whether Nemetz’s failure to use that order was racially motivated. According to Joos-ten, Bray was more experienced than Riehle: ‘You are both equally qualified. You had the experience. She had the rating of a one.” App. at 130a. In fact, Joosten suggested that Bray’s experience might have hurt her: “And since you were — since you had been there for a while we thought it wouldn’t be an incentive for you.” App. at 130a-31a. A jury certainly could conclude that improper racial animus caused Marriott to look unfavorably upon Bray’s experience.
Bray also argues that Marriott violated its own policy in failing to give priority to her prior experience at the Park Ridge in order to justify going outside that hotel to promote Riehle. Marriott counters by stating that Bray incorrectly states that its policy is to give priority in promotion decisions to applicants at the subject hotel. Marriott points to a letter from the Vice President of Human Resources for Marriott dated May 31, 1991. That letter states: “Keep in mind that there may be a number of qualified candidates for any one position and that, before searching outside of their region, hiring managers will try to fill open positions first from within their own hotel or region.” App. at 296a (emphasis added).
Nevertheless, Richard Lesser stated unequivocally in his affidavit that “[i]t was common knowledge that one of the policies at Marriott was to promote from within the *997 subject hotel if at all possible.” App. at 326a. Marriott’s contention is corroborated by Nemetz who testified that no preference was given to an applicant in the same hotel and that this distinction is not even a factor in promotional decisions.
Q: Is it a factor in making the decision as to who to promote, the fact that one individual is in the same hotel and one is not?
A: No.
Q: It’s not even a factor?
A: No.
App. at 222a.
If Lesser is telling the truth, applicants from within were given priority in promotions at the Park Ridge despite Marriott’s policy to the contrary. Given Nem-etz’s view of Bray, a reasonable factfinder could conclude that managers at the Park Ridge stopped giving preference to candidates already at that hotel only when she was competing with a candidate from another Marriott in the same region. Of course, a factfinder could certainly conclude that Lesser was simply mistaken about the hiring policy at the Park Ridge Marriott, but that is not for us to decide. If a factfinder were to conclude that the policy prior to Bray’s application was consistent with what Lesser thought was “common knowledge,” Bray’s interview takes on increased significance. It would further establish that her experience had been evaluated in a manner that made her the top-ranked candidate for the promotion. It would also be consistent with Bray’s testimony that she was led to believe during the interview that Marriott considered her the top candidate, and she was advised that her first decision would be to hire a housekeeping manager. App. at 328a.
3. Occupational Grade Levels
The district court noted that the occupational grade levels of 45 and 43 for Riehle and Bray respectively meant that “Ms. Riehle had attained the position of Assistant Director of Services at the New York Marquis Marriott while plaintiff had only risen to the level of Housekeeping Manager at the Park Ridge Marriott.” Dist.Ct.Op. at 6 (emphasis added). The court repeatedly notes that Bray had “only” attained the level of Housekeeping Manager at the Park Ridge while Riehle had earned the title of Assistant Director of Services at the New York Marquis Marriott. See Dist.Ct.Op. at 14, 15, 18. However, Nemetz testified in his deposition that there was no difference in these job classifications. “It is based on the size of the hotel” with bigger hotels calling the position “Assistant Director of Services” and smaller hotels calling it “Housekeeping Manager.” App. at 239a. Nemetz even conceded that Bray could not have held a higher position than the one she had without the promotion she was seeking as that was the only position above Housekeeping Manager at her hotel.
Marriott is certainly entitled to give Riehle’s job title greater weight than Bray’s even if the only difference in titles is the size of the hotels where they were working. However, Marriott may not do so if racial bias colored how her grade level would be valued. We do not say that this is what happened here only that sufficient issues of fact exist to preclude the entry of summary judgment. We do not doubt that a reasonable factfinder could accept all of Marriott’s explanations and conclude that Riehle was promoted over Bray simply because Riehle was the superior candidate based upon all of the criteria Marriott says it used to make the decision. However, this record does not compel that result as a matter of law.
The significance of such evidence is .for a jury’s determination, not a court’s. Had these discrepancies been presented to a jury, it may have found defendants’ explanations quite credible, and returned a verdict in their favor. However, that is not the test that we employ, nor is it the test the district court should have employed. Drawing all reasonable inferences in favor of plaintiffs, as we must, it is clear that they were entitled to have a jury decide whether or not the reasons proffered ... were real or pretextual.
Hampton v. Borough of Tinton Falls Police Dep’t, 98 F.3d at 115. Thus, we will reverse the district court’s grant of summary judgment.
*998 IV.
The allocation of the burden of proof and the role of plaintiffs prima facie case as first set forth in Fuentes and more recently reaffirmed in Sheridan is equally applicable to a NJLAD claim. Romano v. Brown & Williamson Tobacco Corp., 284 N.J.Super. 543, 665 A.2d 1139 (App.Div.1995). Romano applies the Fuentes standard of review at summary judgment for Title VII cases to NJLAD claims. Id. at 1143-44. Thus, our discussion of Bray’s Title VII claim also applies to her NJLAD claim, and, for the reasons provided above, we find that Bray’s NJLAD claim should have survived summary judgment as well.
V.
For the above reasons, we will reverse the grant of summary judgment to Marriott on Bray’s Title VII and NJLAD claims and remand to the district court for further proceedings consistent with this opinion. In granting summary judgment for defendant, the district court also dismissed Bray’s related state law claims. Upon remand, the court will once again consider these claims.

. Although several different spellings of ''Joos-ten'’ and "Steussy” appear throughout the record, we rely on those used in the district court's opinion except when quoting text where a different spelling is used.

. Marriott formally evaluates its employees and assigns them a "PAF" score on a sliding scale of "1” to "4” with "1” being the highest. See app. at 137a, 224a.

. Personnel evaluations and other information relating to an employee’s joh performance and background are maintained in the employee's Associate Profile.

. The seminars included the following subjects: stress management skills, drugs in the workplace, responding to emergencies, counseling skills, career planning, leadership skills, and discipline skills.

. Here, the position did not remain open after Biay was rejected. Rather, the position was filled when Riehle was chosen over Bray. However, this variance from the letter of the McDonnell Douglas Corp. formula is not relevant to our analysis. "The facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required ... is not necessarily applicable in every respect to different factual situations." McDonnell Douglas Corp., 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

. The district court emphasized the fact that "Ms. Riehle had received the top performance evaluation for her work with Marriott during the previous two years, receiving a T for her PAF rating." Dist. Ct. Op. at 13 (emphasis added). However, when this Court reviewed the record, as we must in reviewing a grant of summary, judgment, it became clear that one of the "Is” had been awarded during a semi-annual review. At oral argument, we asked counsel to explain why Riehle had been given a semiannual review but he could not.

. The record does not establish when Bray or Riehle was interviewed. However, Riehle’s Associate Profile, as updated on June 15, 1993, states that her position is Director of Services, and her “Date in Pos:" is 4/10/93. The form also notes her weekly salary and states that the effective date of that rate is "4/10/93.”

. This is consistent with an annual evaluation occurring in November as Riehle’s two other evaluations (excluding the April evaluation) also occurred during the month of November.

. Nemetz testified that the profile that was updated in June of 1993 (the one referred to by the district court) was not the one he relied upon in ranking Riehle, and the one that he said he relied upon was not produced at his deposition. App. at 238a. This record does not establish what Riehle’s three prior PAF ratings before her promotion were.

. The MCMS requires managers to “[c]ompare each candidates (sic) relevant work experience both pre- and post-Marriott.” App. at 43a.