**Marshall BULLOCK, Sr., Plaintiff,**

v.

**Marvin RUNYON, Postmaster General, United States Postal Service, Defendant.**

**Civil Action No. 94–2902(JAG).**

United States District Court, D. New Jersey.

June 2, 1997.

**434**

Marshall Bullock, Sr., Teaneck, NJ, pro se.

Michael A. Chagares, Asst. U.S. Atty., Newark, NJ, for defendant.

## OPINION

GREENAWAY, District Judge.

### INTRODUCTION

This matter is before the Court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). All papers submitted in support of and in opposition to the motion have been considered. The Court did not hear oral argument. Fed.R.Civ.P. 78. For the reasons stated below, defendant's motion is granted.

### FACTS

Plaintiff Marshall Bullock, Sr. is an employee of defendant United States Postal Service ("USPS"). He worked on the "Tour 2" shift at defendant's Hackensack Processing and Distribution Center located in Hackensack, New Jersey. In September 1992, defendant terminated the Tour 2 shift due to increased automation of the mail processes. Defendant created new job slots for the affected Tour 2 employees. Employees obtained the new job slots by way of a voluntary bidding process. If no bids were submitted for a particular job slot then that slot became a "residual vacancy."[1]

The collective bargaining agreements between the USPS, and the American Postal Workers Union, AFL–CIO ("APWU") and the National Association of Letter Carriers, AFL–CIO (the "Agreements") govern residual vacancies. Per the Agreement, residual vacancies were first assigned to "unassigned employees," i.e., an employee who has been unassigned to a specific job for more than ninety days. An unassigned employee is classified as either "senior" or "junior." Pursuant to the 1987 to 1990 Agreement, senior employees obtained residual vacancies first. After the adoption of the 1990–1994 Agreement junior employees received residual vacancies first. The USPS finalized and distributed the 1990 to 1994 Agreement to the nation's Post Offices in 1993. Prior to the publication and distribution of the 1990–1994 Agreement, the APWU published the "Arbitration Proceedings and Collective Bargaining Agreement." This publication conflicted with the actual language of the 1990–1994 Agreement by incorrectly stating that senior employees would be the first to obtain residual vacancies.

On June 14, 1993, Ben Nowacky ("Nowacky"), a Customer Services Supervisor, unilaterally assigned Bullock to residual vacancy Number 5563236. Nowacky made the assignment pursuant to the Arbitration Proceedings and Collective Bargaining Agreement publication. However, Bullock, at the time an unassigned senior clerk, should not have received the assignment pursuant to the 1990–1994 Agreement. Nowacky asserts that at the time of the assignment he was neither aware of the "senior" to "junior" change in the 1990–1994 Agreement, nor aware of plaintiff's gender or race. Nowacky states that he acted pursuant to his understanding of the APWU publication and the

---

1. A residual vacancy is a term used by the USPS to describe a job opening in which no bids have been received.

1987–90 Agreement. Both documents required that he assign senior employees first to residual vacancies. Dissatisfied with the assignment, Bullock filed a grievance.

On or about July 20, 1993, the APWU opined that the procedures used to place Bullock in the residual vacancy did not violate the Agreement. Thereafter, the APWU withdrew its grievance on Bullock's behalf. Bullock started his employment in the residual vacancy on July 24, 1993. He remained in the position until October 30, 1993. He left at that point to accept another postal position.

On July 26, 1993, Bullock filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") alleging that the North Jersey Area Local of the APWU caused his employer to reassign his job Tour and assignment in violation of Sections 8(a)(1) & (3), and 8(b)(1)(a) and (2) of the National Labor Relations Act. 29 U.S.C. § 158 (1973). Bullock also alleged that in June of 1993 his employer changed his job Tour and assignment due to his membership in and activities on behalf of the APWU. Bullock filed an amended complaint on September 24, 1993. The amended complaint charged the defendant with changing Bullock's job assignment and Tour because of his lack of membership in the APWU.[2]

On December 22, 1993, the NLRB dismissed the charges against the USPS having found that:

> The evidence adduced by the investigation is insufficient to establish your contention that the Employer, United States Postal Service, reassigned your job duties upon the request of your Union, North Jersey Area Local, American Postal, Workers Union, AFL–CIO. Rather, the investigation disclosed that your reassignment resulted from the Employer's need to fill a residual vacancy at the facility in which you are employed. Furthermore, your reassignment appears to be consistent with the terms of the Employer's

collective bargaining agreement with the Union. In addition, there is insufficient evidence that your reassignment was unlawfully motivated, rather than as contended by the Employer, due to staffing considerations done in accordance with the terms of the collective bargaining agreement.

> With regard to that aspect of your charge against the Union, alleging that it failed to process a grievance over your job reassignment, the evidence adduced by the investigation is insufficient to establish your contention that the union [sic] breached its duty of fair representation. Rather, the investigation disclosed that the Union investigated the circumstances of your job reassignment and determined that your grievance was not meritorious. Thereafter, the Union advised you by letter of its determination that your reassignment did not constitute a violation of the collective bargaining agreement and that further consideration of your grievance was unwarranted. There is insufficient evidence that the Union's decision not to proceed with your grievance was based upon any arbitrary or discriminatory considerations rather than its assessment of the merits of the grievance itself.

The NLRB denied Bullock's appeal.

On June 20, 1994, Bullock brought this civil action. He alleges a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* Defendant seeks summary judgment.

### DISCUSSION

In *Fuentes v. Perskie*, 32 F.3d 759 (3d. Cir.1994) this Circuit specifically addressed the proper standard for granting summary judgment in claims arising under Title VII. The standard is one of shifting burdens, with the first burden placed upon the plaintiff. Plaintiff must first establish a prima facie case of discrimination by showing that he:

(1) belongs to a protected category;[3]

---

**2.** Plaintiff fails to explain the inconsistency between his June 1993 charge and his September 1993 charge.

**3.** Title VII prohibits all discrimination in employment based upon race, color, religion sex and

national origin. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981); *Taxman v. Bd. of Ed. of Piscataway*, 91 F.3d 1547, 1557 (3d Cir.1996).

(2) applied for an available position for which he is qualified;

(3) was rejected; and

(4) subsequent to the rejection, the position remained open and the employer continued to accept applications from people of plaintiff's qualifications.

*Fuentes*, 32 F.3d at 763 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

■ There will be times, however, when the facts which give rise to a plaintiff's cause of action will not fit neatly within the above criteria. For example, in this instance plaintiff's claim arises out of defendant's assignment of plaintiff to a particular job, rather than defendant's refusal to hire or promote plaintiff. As stated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973), "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." A plaintiff's inability to apply the above criteria to the specific facts of his case will not relieve him of his burden to first establish a prima facie case. *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

■ In such instances, plaintiff may meet his first burden by establishing that defendant's employment actions were precipitated under circumstances which give rise to an inference of unlawful discrimination. 450 U.S. at 253–54, 101 S.Ct. at 1093–94. The *McDonnell Douglas*, "formula permits a plaintiff to rely, in the absence of direct evidence of discrimination, on a set of assumptions about the behavior of employees." *Chipollini v. Spencer Gifts. Inc.*, 814 F.2d 893, 897 (3d. Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Consequently,

when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.

*Chipollini*, 814 F.2d at 897 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978)). Such evidence raises an inference of unlawful discrimination because it presumes that the employer's acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *Texas*, 450 U.S. at 254, 101 S.Ct. at 1094 (citations omitted). Such inference can be in the form of a material adverse job action premised upon plaintiff's race and/or gender. *Kapossy v. McGraw-Hill, Inc.*, 921 F.Supp. 234, 241 (D.N.J.1996).

■ Since this case does not involve a failure to hire or promote, this Court finds that the four step criteria enunciated in *Fuentes* is not wholly applicable to the facts here; rather Bullock must, by a preponderance of the evidence, establish that he suffered a materially adverse employment action due to his race and/or gender. In other words, Bullock must establish an inference of unlawful discrimination.

■ If the plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for his employment practice. *Hampton, et al. v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112–113 (3d Cir.1996). Defendant's burden is one of production, rather than proof. *Bray v. Marriott Hotels*, 110 F.3d 986, 1997 WL 170287, at *3 (3d. Cir. April 11, 1997)("the burden of proving the actual discrimination lies at all times with the plaintiff"). If a legitimate reason is forthcoming, the defendant's burden is satisfied.

■ The third burden requires plaintiff to prove that the employer's proffered legitimate reasons are, in reality, pretext. *Hampton*, 98 F.3d at 113. Plaintiff meets this burden by either "[a] discrediting the proffered reasons, either circumstantially or directly, or [b] adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause for the adverse employment action." *Hampton*, 98 F.3d at 113; *Fuentes*, 32 F.3d at 764. Plaintiff must demonstrate

"weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them 'unworthy of credence.'" *Fuentes,* 32 F.3d at 764–765. Plaintiff is not required to produce "additional" evidence of prima facie discrimination once he has discredited defendant's "legitimate" reason. *Fuentes,* 32 F.3d at 764.

■ Bullock fails to establish a prima facie case of discrimination. The uncontested facts are:

(1) Bullock was a senior unassigned employee for over ninety days;

(2) per the 1987–1990 Agreement, residual vacancies were to be filled by senior unassigned employees;

(3) per the 1990–1994 Agreement, residual vacancies were to be filled by junior unassigned employees;

(4) the 1990–1994 Agreement was not finalized and distributed to the nation's post offices until 1993;

(5) in the interim, the APWU published the Arbitration Proceedings and Collective Bargaining Agreement which stated that residual vacancies were to be first filled by senior unassigned employees;

(6) Nowacky relied on the Union publication and assigned Bullock to a residual vacancy; and

(7) Bullock served in this position from July 24, 1993 until October 30, 1993.

■ The facts fail to establish an inference of unlawful discrimination. To the contrary, the evidence shows that Nowacky acted pursuant to the Agreement when he placed Bullock in the residual vacancy. Furthermore, nothing indicates that Bullock has suffered a material adverse employment action. He remained in the residual vacancy for approximately two months; he makes no claim of diminished employment benefits and/or future employment opportunity; and he obtained another USPS position. While Bullock argues that he has suffered embarrassment and humiliation, such emotions do not give rise to a Title VII claim.

Bullock alludes to USPS employees Joseph Wirth and Linda Green, a white male and black female. He asserts that they are similarly situated employees. Unfortunately for Bullock, Wirth is not a similarly situated employee. Wirth, who is senior to Bullock, did not receive a residual vacancy because he had already successfully bid on another position. As for Green, plaintiff provides no information on which the Court may determine if Green is or is not similarly situated. He merely states that Green, as well as Wirth were "both left alone." Plaintiff fails to assert or explain what "both left alone" proves. This statement alone is not prima facie evidence of discrimination.

■ Plaintiff also alleges that defendant, in violation of 42 U.S.C. § 1981, deviated from normal procedural guidelines in its quest to assign plaintiff to the residual vacancy. This claim is not alleged in the Complaint and is not properly before the Court.[4]

### CONCLUSION

For the reasons expressed above, defendant's motion for summary judgment is hereby **GRANTED.**

---

**4.** Even if the claim had been asserted properly, § 1981 affords plaintiff no remedy. Federal employees are limited to Title VII employment discrimination claims. *Waiters v. Parsons,* 729 F.2d 233, 236 n. 7 (3d Cir.1984)(citing *Brown v. General Services Admin.,* 425 U.S. 820, 832–35, 96 S.Ct. 1961, 1967–69, 48 L.Ed.2d 402 (1976)).