**AT & T CREDIT CORPORATION**

v.

**TRANSGLOBAL TELECOM ALLIANCE, INC.,**

**and**

**James CARRAWAY**

v.

**AT & T.**

Civil Action No. 95–3676 (NHP).

United States District Court,
D. New Jersey.

May 22, 1997.

Robert M. Leonard, Jeffrey S. Lipkin, Shanley & Fisher, P.C., Morristown, NJ, for Plaintiff/Third Party Defendant AT & T Credit Corporation.

Leonard A. Peduto, Jr., Patricia A. Cauldwell, Chapman, Henkoff, Kessler, Peduto & Saffer, Roseland, NJ, for Defendants/Third Party Plaintiffs.

### AMENDED OPINION

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on the motion of plaintiff, AT & T Credit Corporation ("AT & T Credit"), for summary judgment against defendants Transglobal Telecom Alliance ("Transglobal") and James Carraway ("Carraway") (collectively referred to as "defendants") seeking a determination that defendants breached the terms of a lease agreement and guaranty between AT & T Credit and the defendants. AT & T Credit also seeks an award of damages and a determination that it is entitled to possession of the equipment it leased to Transglobal. Defendants brought a cross-claim to compel discovery responses.

Oral argument was heard in this matter on February 24, 1997. Based upon a review of the record and the arguments of counsel, and as more fully set forth below, AT & T Credit's motion for summary judgment is **GRANTED.** The Court, however, declines to certify the judgment as final due to the remaining claims in the case between defendants and AT & T Corporation, a third-party defendant.

### STATEMENT OF FACTS

On or about July 19, 1994, defendant Transglobal executed a Master Equipment Lease Agreement ("Agreement") which was accepted by plaintiff, AT & T Credit, on August 5, 1994. Pursuant to this Agreement, AT & T Credit agreed to lease AT & T Corp.

telephone equipment to Transglobal. At the same time, Transglobal executed Master Equipment Lease Agreement Schedule 00010 ("Schedule 00010"). According to Schedule 00010, AT & T Credit leased to Transglobal an AT & T Corp. Conversant Communications System and other related equipment ("the Leased Equipment") for a lease term of forty-eight months, commencing August 31, 1994, with monthly rental payments of $4,537.41.[1]

On or about July 19, 1994, Transglobal executed a document acknowledging that the Agreement, Schedule 00010, and all other agreements constituted the entire agreement between Transglobal and AT & T Credit relating to the Leased Equipment. Transglobal also executed a Master Equipment Lease Agreement Commencement Certificate ("Commencement Certificate"), in which Transglobal acknowledged delivery, acceptance, and proper working condition of the Leased Equipment.

Also on or about that same day, defendant Carraway executed a Master Equipment Lease Agreement Guaranty ("Guaranty"), personally guaranteeing to AT & T Credit the full and prompt payment, observance, and performance when due of all obligations of Transglobal under the lease.

Soon after the lease commenced on August 31, 1994, Transglobal's account became delinquent with AT & T Credit. Transglobal made its November 1994 payment, but made no further payments. The Agreement and Schedule 00010 (collectively referred to as "the Lease") provide for a series of specific remedies to AT & T Credit in the event of Transglobal's default. If Transglobal fails to make any monthly payment within ten days of the due date, Transglobal is obligated to pay AT & T Credit a late charge of 5% of the monthly payment. It also obligates Transglobal to pay AT & T Credit interest at a rate of 1½% per month.

Paragraph 20 of the Agreement is a liquidated damages provision, which provides that if default occurs, AT & T Credit has the right to recover damages in the amount of the Lessor's Return, which is defined as the sum of the following amounts:

(a) the aggregate amount of delinquent rental payments (including late fees and interest); plus

(b) the present value of all rental payments due for the remaining term of the lease, discounted at 5%; plus

(c) the present value (discounted at 5%) of the casualty value of the equipment.

As of May 2, 1996, AT & T Credit calculated that amount as $250,658.58. The Agreement also provides for the payment of costs to AT & T Credit, and allows AT & T Credit to take possession of or render unusable the Leased Equipment.

Defendants deny that they are in default in performing their obligations under the Lease documents and that any payments are due to AT & T Credit. Defendants allege that the reason they had to discontinue their operations was that AT & T Corp. breached its agreement with Transglobal. AT & T Corp. and Transglobal had entered into an agreement which provided that AT & T Corp. would provide equipment, lines, and minutes to Transglobal to start up its call turnaround ("CTA") business.[2]

Transglobal joined AT & T Corp. as a third-party defendant in this matter for breach of this agreement. There are several allegations against AT & T, with one being that AT & T Corp. continued amending the agreement after Transglobal had begun operations at an agreed-upon rate. Most simply put, Transglobal contends that the equipment lease with AT & T Credit was merely a component of a complex business arrangement with AT & T Corp. and that Transglo-

---

1. The telephone equipment was installed and operational on June 6, 1994.

2. CTA exploits the differential between the lower rates charged for international and long distance telephone service provided by major United States telecommunications carriers and the substantially higher rates charged for such service by the government-controlled foreign telephone administrations or postal, telephone, or telegraph authorities. CTA technology allows a telephone customer in a foreign country to place an international or long distance call at a rate available from a CTA provider by using international outbound service to call an established CTA telephone number in the United States.

bal and Carraway have valid defenses to the enforcement of the Agreement and the Guaranty.

### DISCUSSION

The standard for a summary judgment motion is set forth in Federal Rule of Civil Procedure 56(c), which provides in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

The movant has the initial burden of identifying evidence that it believes shows an absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When the nonmovant will bear the burden of proof at trial, the movant's burden can be discharged by showing that there is an absence of evidence to support the nonmovant's case. *Id.* at 325, 106 S.Ct. at 2553–54. If the movant establishes the absence of a genuine issue of material fact, the burden shifts to the nonmovant to do more than "simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party is given the benefit of any reasonable inferences to be drawn from the record. *See, e.g., Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993).

### *Transglobal*

In order for AT & T Credit to prevail, it must show that a contractual relationship existed between it and Transglobal, that Transglobal breached the contract, and that AT & T Credit suffered damages.

It is undisputed that Trangslobal entered into the Lease, as Transglobal admits in its Answer, and the terms of the Lease are the embodiment of the parties' agreement.

Additionally, Transglobal has failed to make any payments under the Lease since November 1994. Transglobal has not pointed to any fact to show that it made any payments. The Agreement provides that the lessee "agrees that it has an unconditional obligation to pay all rental payments and other amounts when due." Agreement, ¶ 14. Furthermore, pursuant to the Agreement, the lessee is not entitled to "recoupments, cross-claims, counterclaims or any other defenses to any rental payments or other amounts due hereunder, whether those defenses arise out of claims by lessee against lessor, seller, this agreement, any schedule or otherwise." Agreement, ¶ 12.

Transglobal contends that summary judgment is inappropriate based on the claims pending against AT & T Corp. However, those claims are independent of the claims by AT & T Credit. No allegation in Transglobal's third-party complaint against AT & T Corp. claims that AT & T Credit committed any wrongdoing. The Agreement provides that "lessor shall not be bound by, or liable for, any representation or promise made by seller (even if lessor is affiliated with seller)." *Id.*

■ New Jersey law governs this dispute, as stated by the express provisions of the Lease. Under New Jersey law, a promise to make all requisite payments and not to assert any defenses to payment are valid and enforceable. The New Jersey Uniform Commercial Code ("NJUCC") provides:

(1) In the case of a finance lease that is not a consumer lease the lessee's promise under the lease contract becomes irrevocable and independent upon the lessee's acceptance of the goods.

(2) A promise that has become irrevocable and independent under subsection (1):

(a) is effective and enforceable between the parties, and by or against third parties including assignees of the parties, and

(b) is not subject to cancellation, termination, modification, repudiation, excuse,

or substitution without the consent of the party to whom the promise runs.

N.J.S.A. 12A:2A–407 (West Supp.1997).

The controlling question in this matter is whether the Lease is in fact a finance lease as defined under the NJUCC:

(g) "Finance lease" means a lease with respect to which:

(i) the lessor does not select, manufacture, or supply the goods;

(ii) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and

(iii) one of the following occurs:

[inapplicable subsections deleted]

(D) if the lease is not a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee in writing (a) of the identity of the person supplying the goods to the lessor ... (b) that the lessee is entitled under this chapter to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods, and (c) that the lessee may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.

N.J.S.A. 12A:2A–103(g) (West Supp.1997).

■ The first two conditions are satisfied, in that AT & T Credit did not select, manufacture, or supply the Leased Equipment, and it acquired the equipment in connection with the Lease.

Subsection (g)(iii)(D), the third condition, is also satisfied. Transglobal clearly had possession of the Lease documents before signing, and therefore was provided with the requirements enunciated by subsection (g)(iii)(D). Transglobal was made aware of the warranties and representations in the Lease documents and that Transglobal had a right to pursue the seller (AT & T Corp.) for "any and all claims and warranties relating to the equipment." Agreement, ¶ 15, "Lessor Disclaimers; Limitation of Remedies." [3]

Comment (g) to NJUCC section 2A–103 is instructive in this matter. The Comment provides in part:

Due to the limited function usually performed by the lessor, the lessee looks almost entirely to the supplier for representations, covenants and warranties. If a manufacturer's warranty carries through, the lessee may also look to that. Yet, this definition does not restrict the lessor's function solely to the supply of funds; if the lessor undertakes or performs other functions, express warranties, covenants and the common law will protect the lessee.

N.J.S.A. 12A:2A–103, Comment (g) (West Supp.1997). Here, AT & T Credit merely provided the vehicle necessary for Transglobal to finance the equipment. AT & T Credit performed no other function. Its disclaimers were prominent in the Lease, and the Lease provided that Transglobal had a right of action as to AT & T Corp. for any warranties, representations, etc.

■ Transglobal argues that the "close connection" between AT & T Credit and AT & T Corp. gives it defenses not otherwise available for a finance lease. This argument is without merit. The NJUCC "creates no special rule where the lessor is an affiliate of

**3.** The pertinent portion of the text of this disclaimer is as follows (the wording in the Agreement is in bold-face type and in capital letters): It is specifically understood and agreed that: (A) Lessor shall not be deemed to have made any representation, warranty or promise made by seller, neither seller nor lessor shall act as, or be deemed to be, an agent of the other, and lessor shall not be bound by, or liable for, any representation or promise made by seller (even if lessor is affiliated with seller) ... It is further agreed that lessor shall have no liability to lessee, lessee's customers, or any third parties for any direct, indirect, special or consequential damages arising out of this agreement or any schedule or concerning any equipment ... provided, however, that nothing in this agreement shall deprive lessee of any rights it may have against any person other than lessor. Lessee shall look solely to seller for any and all claims and warranties relating to the equipment.

the supplier; whether the transaction qualifies as a finance lease will be determined by the facts of each case." *Id.*

The terms of the Lease are clear and unambiguous. Transglobal discontinued making its monthly payments while in possession of the Leased Equipment. Therefore, this Court finds that the Lease in this matter between AT & T Credit and Transglobal is a finance lease and that Transglobal breached the Lease. Consequently, summary judgment is appropriate as to Transglobal.

### James Carraway

■ Carraway's personal guaranty provided that he would "unconditionally guarantee to Lessor the full and prompt payment, observance and performance when due of all obligations of Lessee under the Agreement and any and all Schedules." Guaranty, ¶ 2. Carraway also waived all affirmative defenses, offsets, and counterclaims. Because Transglobal has breached the Lease, and because Carraway waived any defenses to the Guaranty, summary judgment is appropriate as to Carraway.

### Return of Equipment

The Lease provides that AT & T Credit may take possession of or render unusable the Leased Equipment in the event of default. Defendants do not contest this portion of AT & T Credit's motion for summary judgment, and it is therefore granted.

### Certification as Final Judgment

■ AT & T Credit urges the Court, in the event its summary judgment motion is granted, to certify such judgment as final. The Court will not so certify the judgment. Pursuant to Federal Rule of Civil Procedure 54(b), a court may enter summary judgment on fewer than all the claims in a multi-claim or multi-party action. Such an entry of summary judgment, however, is interlocutory and does not terminate the action as to the particular claim ruled upon or the particular party affected by the ruling. In certain circumstances, a district court may determine that such judgment be considered a final judgment, but only "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b).

■ Rule 54(b) requests are to be granted sparingly. *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980). Judicial economy is certainly best served by delaying appellate proceedings until all claims and issues are disposed of and can be reviewed in a single "parcel." *See Cullen v. Margiotta,* 618 F.2d 226, 228 (2d Cir.1980). Because there are substantial claims still remaining in the case *sub judice,* the Court will not certify its summary judgment as final.

### CONCLUSION

Based upon the foregoing, AT & T Credit's motion for summary judgment as to Transglobal and Carraway is **GRANTED,** and defendants' cross-motion to compel discovery responses is **DENIED.** The Court does not certify the judgment as final.

An appropriate Order accompanies this Letter Opinion.

### AMENDED ORDER

This matter having come before the Court on the motion of plaintiff, AT & T Credit Corporation ("AT & T Credit"), for summary judgment against defendants Transglobal Telecom Alliance ("Transglobal") and James Carraway ("Carraway") (collectively referred to as "defendants"); and defendants having brought a cross-claim to compel discovery responses; and oral argument having been heard in this matter on February 24, 1997; and for good cause having been shown;

IT IS on this 22nd day of May, 1997,

**ORDERED** that the motion of AT & T Credit be and hereby is **GRANTED;** and it is

**FURTHER ORDERED** that the cross-motion of defendants be and is hereby **DENIED;** and it is

**FURTHER ORDERED** that Transglobal and Carraway are jointly and severally liable in the amount of $250,658.58, plus interest, legal fees, and costs of suit; and it is

**FURTHER ORDERED** that AT & T Credit take immediate possession of the leased equipment.

The Court does not certify this Order as final pursuant to Fed.R.Civ.P. 54(b).