**AT&T CREDIT CORPORATION,**
Plaintiff,

v.

**ZURICH DATA CORPORATION and**
**Zurich Depository Corporation, De-**
**fendants/Third Party Plaintiffs,**

v.

**AT&T Corporation, Lucent Technolo-**
**gies, Inc. and Commvault Systems,**
**Third Party Defendants.**

**Civ. No. 96–1682(WHW).**

United States District Court,
D. New Jersey.

Feb. 24, 1999.

Robert M. Leonard, Jeffrey S. Lipkin, Shanley & Fisher, P.C., Morristown, NJ, for Plaintiff AT & T Credit Corp.

David A. Laughlin, David W. Phillips, St. John & Wayne, L.L.C., Two Penn Plaza East Newark, NJ, for Defendants/Third Party Plaintiffs Zurich Data Corp. and Zurich Depository Corp.

## OPINION

WALLS, District Judge.

This matter comes before the Court on the motion of plaintiff AT & T Credit Corp. ("AT & T Credit") for summary judgment on its claims against defendants Zurich Data Corp. and Zurich Depository Corp. (collectively "Zurich") and dismissal of defendants' counterclaim and the cross-motion of the Zurich defendants for summary judgment to dismiss the complaint. Pursuant to Fed.R.Civ.P. 78, the Court decides these motions without oral argument. Plaintiff AT & T Credit's motion for summary judgment on its claims is granted; AT & T Credit's motion for summary judgment dismissal of the defendants' counterclaim is denied; the Zurich defendants' motion to dismiss the complaint is denied.

## FACTS

This action arises out of a lease agreement between plaintiff AT & T Credit and the Zurich defendants wherein plaintiff was to finance defendants' purchase of computer hardware and software from the AT & T Corporation ("AT & T Corp."). Under the Master Equipment Lease Agreement ("the Lease Agreement"), Zurich Data agreed to assign its rights in equipment purchased from AT & T Corp. to AT & T Credit and AT & T Credit agreed to lease back certain computer hardware and software to Zurich Data for thirty-six months beginning July, 1995. Pursuant to an amendment to the Lease Agreement, Zurich Depository agreed to be a co-lessee with Zurich Data, jointly and severally responsible for the payment obligations of the Lease Agreement. On July 5, 1995, when Zurich executed the Lease Agreement by a Commencement Certificate, it acknowledged delivery, acceptance, and proper working condition of the leased equipment. (Lipkin Aff. Ex. V.)

That equipment was the subject of a September 21, 1994 purchase and licensing agreement ("Licence Agreement") between Zurich and AT & T Corp. Under that Agreement, AT & T Corp. agreed to sell to Zurich computer hardware, software, licenses, development rights, and technical support known as a "CommVault" system. The CommVault system would enable Zurich, a data storage business, to receive data for storage from its clients electronically. AT & T Corp. delivered the system to Zurich in November, 1994 and March, 1995. Because AT & T Corp. did not receive payment from Zurich, by letter dated June 30, 1995 it terminated their License Agreement. Although this termination letter was dated before Zurich Data executed its Lease Agreement with AT & T Credit, the termination was not effective until 90 days from the letter's date. Zurich Data contends that although it possessed the equipment, it was not licensed to use it at the beginning of the Lease Agreement because the License Agreement had already been terminated. Zurich argues that the lease was not initiated because AT & T Credit never delivered the licenses to use the equipment.

According to AT & T Credit, in August, 1995 Zurich made a payment under the Lease Agreement and did not make any subsequent ones. (Compl.¶ 9.) On April 17, 1996, AT & T Credit sued Zurich for breach of the Lease Agreement. By letter to AT & T Credit dated July 16, 1996, Zurich revoked its acceptance of the leased equipment. (Lipkin Aff., Ex. W.) On August 30, 1996, Zurich filed an answer, counterclaim, and a third-party complaint against AT & T Corp., Lucent Technologies, Inc., and CommVault Systems.[1] In its counterclaim, Zurich asserts that the equipment never performed to standards set by the License Agreement and that AT & T Corp. and AT & T Credit acted together to breach the License Agreement. Zurich contends that the Lease Agreement was related to the License Agreement with AT & T Corp. Zurich's third-party complaint asserts claims for breach of contract, breach of warranties in the License Agreement, tortious interference with contract, and tortious interference with prospective business advantage.

Earlier, plaintiff moved for summary judgment. This Court held by Letter Order that material issues of fact existed as to whether the Lease Agreement was ever effected-whether plaintiff actually delivered the goods to be leased-and, if so, whether the leased goods were timely rejected by defendant Zurich Data. The Court determined that the lease entered into by AT & T Credit and Zurich was a finance lease defined by the New Jersey Uniform Commercial Code, N.J.S.A. 12A:2A–101 *et seq.* Notwithstanding defendants' objections, the Court found that the actual status of the Lease Agreement was not affected by the relationship of AT & T Credit to AT & T Corp. as its corporate subsidiary. The Court wrote that in order to effect a finance lease, a lessor must first acquire the goods to be leased, and it was unclear whether AT & T Credit ever acquired the equipment. AT & T

Credit maintained that it had acquired the equipment when Zurich Data assigned its rights under the License Agreement to it. However, because the License Agreement was canceled apparently before Zurich executed the Lease Agreement, the Court concluded that it was uncertain what goods, if any, AT & T Credit was entitled to lease defendants after June 30, 1995.

AT & T Credit maintains that after further discovery, these material issues of fact have been resolved. In particular, it contends that the June 30, 1995 letter of termination did not take effect until 90 days later. (Lipkin Aff., Ex. R.) Because of this, the License Agreement was still in effect on July 5, 1995 when the Lease Agreement was executed. And the licenses were "delivered" with the software and hardware. AT & T Credit argues that James Holleran, president/CEO of Zurich, admitted in his deposition that after the June 30, 1995 letter both Zurich and AT & T Corp. continued to operate as if the License Agreement had not been terminated. (Pl.'s Br. in Supp. of Its Mot. for Summ. J. at 15; Lipkin Aff. Ex. G at 100:5–101:6.) As to the second issue of material fact, AT & T Credit claims that the Court need not decide whether Zurich's delay in revoking its acceptance of the leased goods was reasonable, because Zurich, as a matter of law, cannot revoke its acceptance. (Pl.'s Br. in Supp. of Its Mot. for Summ. J. at 18.)

Zurich maintains that the complaint should be dismissed because AT & T Credit never delivered the licenses for the CommVault system, the Lease Agreement was never initiated and therefore cannot be enforced. Zurich argues that it believed the June 30, 1995 termination would be rescinded after payments were made under the lease, but that termination was not rescinded. Hence, AT & T Credit did not obtain the licenses to deliver them to

---

1. In February, 1996, AT & T Corp. transferred the division of its business which included the CommVault product line to Lucent. Subsequently, *Lucent sold and assigned the Com*mVault product line to CommVault Systems Inc.

it. Zurich further asserts that AT & T Credit has not established that the Lease Agreement was a finance lease within the irrevocability provisions of N.J.S.A. § 12A:2A–407. It argues that AT & T Credit failed to mitigate its damages by repossessing the equipment from Zurich after Zurich had revoked its acceptance. Finally, Zurich contends that AT & T Credit interfered with Zurich's efforts to sell the leased equipment because it informed the prospective purchaser that Zurich was in default of the Lease Agreement.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Sound Ship Building Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir.1976), cert. denied, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Wahl v. Rexnord, Inc. 624 F.2d 1169, 1181 (3d Cir.1980).

### B. Whether the Lease Agreement Is a Finance Lease

■ In its Letter Order of September 23, 1997, this Court determined that the Lease Agreement entered into between AT & T Credit and Zurich was a finance lease as defined by the New Jersey Uniform Commercial Code, N.J.S.A. 12A:2A–101 et. seq. (Letter Order at 6.) Because this issue has already been decided, the Court will not revisit it to violate the Law of the Case Doctrine. "[O]nce an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." Waldorf v. Borough of Kenilworth, 878 F.Supp. 686, 695 (D.N.J.1995)(citing Hayman Cash Register Co. v. Sarokin, 669 F.2d 162 (3d Cir.1982)). Here, there are no unusual circumstances.

### C. Whether the Leased Goods Were Delivered to Zurich

■ To succeed on the motion for summary judgment on its breach of contract claim, AT & T Credit must prove that a contractual relationship existed with Zurich, that Zurich breached the contract, and AT & T Credit suffered damages. This Court has previously determined that AT & T Credit and Zurich entered into a Lease Agreement, but found that there was a material issue as to whether AT & T Credit delivered the leased goods to Zurich and effected the agreement. Zurich maintains that AT & T Credit never ac-

quired the leased goods or delivered them. Pursuant to the Lease Agreement, AT & T Credit was to obtain the leased equipment by an assignment of Zurich's rights under the License Agreement. Because the License Agreement was terminated before the Lease Agreement was executed, Zurich contends it had no licenses to assign to AT & T Credit and AT & T Credit no licenses to deliver to it. AT & T Credit rejoins that the termination of the License Agreement was not effective until 90 days after June 30, 1995: the License Agreement was still in effect on July 5, 1995 when the Lease Agreement was executed, the licenses were assigned to AT & T Credit and delivered to Zurich.

■ The Court finds that the License Agreement was in effect on July 5, 1995 when the Lease Agreement was executed and that the leased equipment, including the licenses, was delivered to Zurich. Zurich acknowledges that part of the CommVault system was delivered on November 17, 1994 and the remaining part delivered on March 27, 1995. Zurich's position that the License Agreement was terminated on June 30, 1995 is undermined by the termination letter itself and the testimony of its president/CEO, James Holleran. The June 30, 1995 letter provided 90 days notice of the License Agreement's termination. Mr. Holleran admitted that the Agreement remained in effect during those following 90 days. (Lipkin Aff., Ex. R., Ex. G at 100:5–101:6.) Because the License Agreement was in effect when the Lease Agreement was executed, the licenses passed by assignment to AT & T Credit which "delivered" them to Zurich on July 5, 1995. The Lease Agreement was effected and enforceable.

## D. Whether Zurich Timely Revoked Its Acceptance of the Leased Goods

■ In its Letter Order, this Court had found that under N.J.S.A. 12A:2A–509 Zurich had the right to reject the leased goods in a timely fashion if they did not conform to the lease agreement. However, the Court could not determine whether the rejection was reasonable because there was no evidence of what occurred between the time the Lease Agreement was executed and defendants revoked their acceptance of the leased goods. AT & T Credit argues that, as a matter of law, Zurich cannot reject delivery or revoke its acceptance of the leased goods because it accepted these goods irrevocably when it executed the Lease Agreement and the Commencement Certificate. According to AT & T Credit, Zurich expressly waived any statutory right it had to reject nonconforming leased goods. (Lipkin Aff. Ex. S at ¶ 15.) In boldface capital letters, the Lease Agreement reads:

LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED UPON A LESSEE BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY LESSOR'S RIGHTS AS DESCRIBED IN THIS SECTION OR OTHER SECTIONS OF THIS AGREEMENT. (Id.)

AT & T Credit claims that this language in the Lease Agreement precludes defendants from asserting any statutory right to reject the goods. As this Court previously found, the Lease Agreement imposes on Zurich an unconditional obligation to make payments to AT & T Credit regardless of its dissatisfaction with the leased goods. (Letter Order at 6.) AT & T Credit asserts that even if Zurich had the right to reject nonconforming leased goods, it failed to do so in a timely manner. That Zurich did not attempt to revoke its acceptance until almost a year after the execution of the Lease Agreement and three months after this action was commenced is suspect and unreasonable, according to AT & T Credit.

Finance leases with such rigid provisions are routinely enforced by courts. Under New Jersey law, promises to make all requisite payments and not to assert any

defenses to such payment are valid and enforceable. *AT & T Credit Corp. v. Transglobal Telecom Alliance, Inc.,* 966 F.Supp. 299, 302 (D.N.J.1997)(citing N.J.S.A. 12:2A–407). Zurich expressly waived its statutory right to reject the leased goods for nonconformity. When Zurich executed the Lease Agreement and the Commencement Certificate, it accepted the leased goods and relinquished its right to later reject those goods. The Court finds Zurich's waiver of its statutory rights in the Lease Agreement to be valid and enforceable-Zurich accepted the leased goods. As a matter of law, it could not reject them thereafter.

### E. Whether Zurich Breached the Lease Agreement

■ AT & T Credit asserts, and Zurich does not deny, that no payments were made under the Lease Agreement after August, 1995. Zurich made the first monthly payment but failed to make any subsequent ones. Zurich repeats that it had no duty to make any payments under the Lease Agreement because the leased goods were not delivered and the agreement not effected. Because the Court has found that the leased goods were delivered, that argument fails. Zurich's failure to make all save the first monthly payment constituted a breach of the Lease Agreement.

### F. AT & T Credit's Damages

The Lease Agreement provides specific remedies in the event of Zurich's default. The value of the leased equipment was $248,200.00. Zurich agreed to pay $270,-607.92 to AT & T Credit under their agreement in 12 monthly installments of $9,020.26 and 24 monthly payments of $6,765.20. (Lipkin Aff. Ex. U.) If Zurich failed to make a monthly payment within ten days of its due date, it was required to pay AT & T Credit a late charge of 5% of the monthly payment. (Lipkin Aff. Ex. S at ¶ 6.) Zurich is also obligated to pay AT & T Credit interest on the past due amount at the rate of 1 1/2% per month. (Lipkin Aff. Ex. S at ¶ 6.) In addition, the Lease Agreement includes a liquidated damages clause which permits AT & T Credit to recover damages in the amount of the Lessor's Return—the aggregate amount of the delinquent rental payments, including late fees and interest, the present value of all rental payments due for the remainder of the lease (discounted at 5 %), and the present value (discounted at 5%) of the casualty value of the equipment. (Lipkin Aff. Ex. S at ¶¶ 13, 20). AT & T Credit asserts that this Lessor's Return is $354,323.24 as of March 5, 1996, the date Zurich's account was formally terminated. Under the Lease Agreement, AT & T Credit is also entitled to recover its costs and expenses incurred to enforce the terms of the agreement. (Lipkin Aff. Ex. S at ¶ 20.)

Zurich argues that AT & T Credit is not entitled to these damages because it "abandoned" the equipment, failing to mitigate its damages, and interfered with Zurich's efforts to sell the equipment. Zurich contends that AT & T Credit never attempted to repossess the leased equipment. Instead, AT & T Credit thwarted Zurich's efforts to sell the equipment by informing the prospective purchaser that Zurich was in default of the lease and that the equipment would be repossessed.

■ The burden is on the breaching party to prove facts in mitigation of damages. *Cohen v. Radio–Electronics Officers Union, Dist. 3, NMEBA, AFL–CIO,* 275 N.J.Super. 241, 262, 645 A.2d 1248, 1259 (App.Div.1994) (citing *Roselle v. La Fera Contracting Co.,* 18 N.J.Super. 19, 28, 86 A.2d 449 (Ch.Div.1952)). The Lease Agreement gave to AT & T Credit the option to repossess the leased equipment in the event of Zurich's breach but did not require it to do so. That AT & T Credit did not repossess the leased equipment has no impact on the amount of damages to which it is entitled. Zurich asserts that AT & T Credit interfered with its effort to sell the leased equipment

and to mitigate damages. However, AT & T Credit's alleged interference was not wrongful. Zurich has charged that AT & T Credit informed the prospective purchaser that Zurich was in breach of the Lease Agreement and that AT & T Credit would repossess the leased equipment. Because Zurich was in breach of the Lease Agreement and AT & T Credit was entitled to repossess the leased equipment, AT & T Credit's conveyance of this information to the prospective buyer was not wrongful. It was a statement of reality. Zurich has failed to prove any facts to mitigate AT & T Credit's damages. AT & T Credit is entitled to receive the Lessor's Return of the Lease Agreement, $354,-323.24 with reasonable attorneys' fees and costs it has incurred in this litigation.

### G. AT & T Credit's Motion for Summary Judgment Dismissal of Defendants' Counterclaim

AT & T Credit moves to dismiss defendants' counterclaim against without any arguments in support of its motion. The summary judgment motion is denied.

### CONCLUSION

AT & T Credit's motion for summary judgment on its claims against Zurich Data and Zurich Depository is granted; its summary judgment motion to dismiss defendants' counterclaim is denied. The Zurich defendants' motion to dismiss the complaint is denied.

SO ORDERED:

### ORDER

This matter comes before the Court on the motion of plaintiff AT & T Credit Corp. ("AT & T Credit") for summary judgment on its claims against defendants Zurich Data Corp. ("Zurich Data") and Zurich Depository Corp. ("Zurich Depository") and dismissal of defendants' counterclaims and the cross-motion of defendants Zurich Data and Zurich Depository for summary judgment to dismiss the complaint. Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion,

ORDERED that plaintiff AT & T Credit's motion for summary judgment on its claims against Zurich Data and Zurich Depository is granted;

ORDERED that plaintiff AT & T Credit's motion to dismiss defendants' counterclaim is denied;

ORDERED that the motion of defendants Zurich Data and Zurich Depository to dismiss the complaint is denied;

ORDERED that plaintiff's attorneys submit a detailed certification of fees and costs incurred in this litigation to the Court on or before March 15, 1999.