**Craig R. MAXWELL, Appellant**

v.

**Linda M. SPRINGER, Director, United States Office of Personnel Management.**

No. 06–4984.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 28, 2008.

Filed: April 15, 2008.

Neal A. Sanders, Law Offices of Neal Alan Sanders, Butler, PA, for Appellant.

Robert L. Eberhardt, Office of United States Attorney, Pittsburgh, PA, for Linda M. Springer.

Before: SCIRICA, Chief Judge, RENDELL, Circuit Judge, and RODRIGUEZ [1], District Judge.

**OPINION OF THE COURT**

RODRIGUEZ, District Judge.

Craig R. Maxwell appeals from the District Court's Memorandum Opinion and Order granting the motion of the Director of the United States Office of Personnel Management to dismiss Maxwell's Complaint, or in the alternative for summary judgment on his employment discrimination case. The underlying Complaint alleged that Maxwell was not selected for a promotion because of his age and gender, in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964.[2] For the

---

1. The Honorable Joseph H. Rodriguez, Senior District Judge, United States District Court for the District of New Jersey, sitting by designation.

2. Although there were some references made in the briefing to the Pennsylvania Human Relations Act, no PHRA claim was asserted in the Complaint. (*See* A22–A27.)

reasons below, we will affirm the District Court's entry of summary judgment.

## I.

Because we write solely for the parties, who are familiar with the facts and procedural history of the case, we will set forth only those facts necessary to our analysis.

Craig R. Maxwell is employed by the United States Office of Personnel Management ("OPM") in Boyers, Pennsylvania. He was hired by the OPM in 1983, and in 1996 he was promoted to the GS–09 position of Legal Administrative Specialist ("LAS"). In 1999, while a GS–09, he contends that he performed GS–11 LAS duties in the annuity processing department. He received favorable performance evaluations,[3] and was requested to be a subject matter expert, training others in annuity processing on various aspects of the LAS position.[4] He was transferred from the Annuity Processing Section back to the Survivor Processing Section based on the fact that he was performing work above his pay grade in Annuity Processing.

In the fall of 2002, Maxwell applied, for the third time, for a Legal Administrative Specialist position in the Annuity Processing Section of the OPM. Although the position was another GS–09 job, it carried a career ladder promotion potential to GS–11. Maxwell has asserted that if he had

been selected for the Annuity Processing Section position, he would have been eligible for immediate promotion to the GS–11 level because he had performed the functions of that vacant position for over a year. In January of 2003, Maxwell was informed that he had not been selected. He was forty-five years old at the time.[5]

The District Court determined that there was insufficient evidence in the record upon which a reasonable jury could return a verdict in Maxwell's favor on the claims of age and gender discrimination. Accordingly, the court granted summary judgment.

## II.

This Court has jurisdiction over appeals from all final decisions of the district courts pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo, applying the same test as the district court. *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir.2005). Summary judgment should be awarded only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All reasonable inferences must be made in favor of the non-

---

**3.** Maxwell contends he was always evaluated as "Fully Successful" or "Exceeds Fully Successful," although he may never have received the top rating of "Outstanding" on a bi-annual or annual evaluation. (A184, Maxwell Dep., p. 56.)

**4.** Maxwell states he received a letter of appreciation dated January 27, 2000, which he included in his application materials, for his work as an instructor of the original hires to the GS–11 position. (Maxwell Aff., p. 3.) The Court is aware that in the course of the OPM EEO investigation, Donald Lacey, Director of the OPM center at Boyers, made a statement

to the effect that Maxwell did not train anyone to perform at the GS–11 level. In reviewing the grant of a motion for summary judgment, however, the Court must view the record as the District Court did, in a light most favorable to Maxwell as the nonmoving party. In doing so, the Court also notes that in October of 2002, Maxwell received an award for his efforts on the RIS 9/11 Team. (A203–A206.)

**5.** Maxwell reapplied for the position in 2004, and was selected on June 27, 2004. He received GS–11 status in August of 2005.

moving party, and the court may not weigh the evidence or assess credibility. *Id.*

## III.

The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose. *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 525–27 (3d Cir.1992). To prove as much in the context of failure to hire or promote, a plaintiff ordinarily must show that he or she: (1) is a member of a protected class; (2) was qualified for the position sought; (3) was rejected despite being qualified; and, (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff to fill the position or treated more favorably those not in the protected class. *Sarullo v. United States Postal Service,* 352 F.3d 789, 797 (3d Cir. 2003); *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995). The analysis is somewhat modified in the context of reverse discrimination, in that the plaintiff must present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others under similar circumstances, based upon a trait that is protected under Title VII. *See Iadimarco v. Runyon,* 190 F.3d 151 (3d Cir.1999); *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ("The central focus of the inquiry ... is always whether the employer is treating some people less favorably than others because of" their race, religion, gender, age, etc.).

Once a plaintiff establishes a prima facie case of discrimination, the "burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"

*Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994) (emphasis removed) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes,* 32 F.3d at 763 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." *Fuentes,* 32 F.3d at 763. A plaintiff may establish pretext directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered reason is unworthy of credence. *Ezold,* 983 F.2d at 523.

That is, to defeat a motion for summary judgment, a plaintiff can show pretext by "point[ing] to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Iadimarco,* 190 F.3d at 166 (quoting *Fuentes,* 32 F.3d at 764). One of these is sufficient; the employee does not have to prove both that the explanation is implausible *and* that discrimination was a motivating factor. *Waldron v. SL Indus., Inc.,* 56 F.3d 491, 494–95 (3d Cir.1995). Rather, it is sufficient that plaintiff shows "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact

finder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (citing *Ezold*, 983 F.2d at 527).

Where the plaintiff offers evidence "that would allow reasonable minds to conclude that the evidence of pretext is more credible than the employer's justifications, the employer's motion for summary judgment must fail." *Iadimarco*, 190 F.3d at 166. Thus, if a plaintiff produces credible evidence that it is more likely than not that the employer did not act for its proffered reason, the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent. *Ezold*, 983 F.2d at 524. Significantly, "an employer cannot successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.'" *Iadimarco*, 190 F.3d at 166.

### IV.

The OPM has not disputed that Maxwell made out a prima facie case of gender discrimination. He was a male who applied for and was qualified to perform the job of a GS–11 LAS; yet he was rejected and the OPM selected eight internal candidates for the open positions, all of whom

are women. Thus, no males were promoted internally. On the other hand, the OPM argued at the summary judgment stage that Maxwell could not make out a prima facie case of age discrimination. In this appeal, however, the OPM has not disputed the District Court's assumption that Maxwell demonstrated a prima facie case of age discrimination by showing: (1) that he was an individual over forty years old; (2) who applied for and was qualified to perform the job of a GS–11 LAS; (3) that he was rejected; and (4) that the OPM selected several younger people for the position. Rather, the Appellee has concentrated its efforts on the argument that the District Court correctly found that there was no record evidence from which a fact finder could conclude pretext or that the OPM's real motivation was discrimination.

Indeed, the District Court found that Maxwell presented no evidence to create a genuine issue of material fact regarding the credibility of the OPM's proffered reasons for not hiring him. Based on the interview panel's assessments, the District Court accepted that Maxwell was not among the best qualified for the job, based on the combination of factors evaluated.

There is no dispute that Maxwell was capable of performing the duties of the position, as required by the job announcement,[6] as he had previously done so for

---

6. The "critical competencies" of the position were listed as:

    1. Ability to analyze and evaluate information, weigh alternatives, and recommend solutions. 2. Ability to plan, organize, and coordinate work while adapting to new methods and processes in a rapidly changing work environment. 3. Ability to communicate, both orally and in writing with a variety of people, using good interpersonal relationships skills and professionalism. 4. Knowledge of general business fiscal operations practices, such as accounting or book-

keeping, employee benefits programs (retirement, health or life insurance, Social Security, etc.).

    The job announcement then indicated that OPM would "score qualified applicants based on their experience, education, training and total accomplishments that are directly related to the 4 competencies above. We will also take into consideration your most recent performance appraisal; any related honors or awards (including performance awards) you have received or any special accomplishments you have achieved within the last year; any

four years. (*See* Snyder Aff., p. 2.) Pamela Snyder, one of the three individuals on the panel that interviewed candidates for the position, has stated that the "panel developed a criteria for selection, following the guidelines of merit systems and what the job entailed, as well as what would give [them] a good idea of the candidate's ability to work in the area in which the promotion was involved." (Snyder Aff., p. 1.)[7]

The record indicates that the interview panel asked the same questions to all applicants and assigned a score to each applicant's responses. Snyder stated that Maxwell "did fairly well in the interview. He handled himself well." (*Id.* at p. 2.) Donna Krepin, another interview panelist, agreed, stating Maxwell "did fairly well in the interview." (Krepin Aff., p. 2.) She elaborated in her deposition, that "he gave good answers. Provided a lot of detail. He was professional and polite." (A233, Krepin Dep., p. 29.) Krepin recalled nothing negative about Maxwell's interview, and in fact initially recommended him for the promotion "because he had a pretty detailed resume that showed a lot of experience, and he did well in his interview. He was able to provide a lot of good examples of his work." (A233–A234, Krepin Dep., pp. 29, 33.)

Snyder also stated, "[h]owever, there are other areas which we looked at including work attitude and work ethic, a good working relationship with co-workers and management, together with customer service skills." (Snyder Aff., p. 2.) Although there is no indication from the record that

she related those areas to Maxwell, Snyder indicated that his name did not appear on the original "competitive certificate," or list of the "best qualified" candidates for the position, but it was included on one of the subsequent lists forwarded from Personnel. (*Id.* at p. 2–3.)

The third member of the review panel, Douglas Berger, stated Maxwell "performed average at the interview. He did not appear to be the best candidate of those ... interviewed.... [He] was not one of the best qualified." (Berger Aff., p. 1.)

The panel unanimously recommended eleven people to the selecting official, Donald Lacey. Lacey relied on the panel's recommendation in hiring the eight internal candidates and three from outside the OPM. Lacey explained to the OPM's EEO investigator, "The competition internally is fierce. Most who applied had many years experience." (A127.)

Those internal candidates hired over Maxwell, with nineteen years' service, were:

| | Age at the time | Years of OPM Service |
| --- | --- | --- |
| Tana Beighley * | 49 | 22 |
| Doreen Doerr * | 44 | 23 |
| Jacqueline Graham | 30 | 11 |
| Ann Johns | 38 | 18 |
| Laurie Kelly | 37 | 19 |
| Katherine McCune * | 36 | 17 |
| Kathy Savage | 45 | 28 |
| Tabatha Walker | 34 | 14 |

education or training courses or other self-development you have completed that is related to the competencies listed above within the last three years." (A199.)

7. Snyder elaborated on the difference between those selected as GS–09s versus GS–05s. Apparently, if an internal candidate was

at the GS–07 level, he or she would have to return to the GS–05 level to be selected for the position. (*Id.* at p. 2.) Another panel member, Donna Krepin, concurred. (Krepin Aff., p. 1.) Those internal candidates already at the GS–09 level were placed as GS–09s upon selection. (Snyder Aff., p. 2.)

* = Candidate had not previously worked in Annuity Processing.

In addition, there were three candidates hired from outside OPM, one male, age 39, and two women, ages 49 and 56.

When asked for an explanation as to why Maxwell would have been passed over, Lacey responded, "People's perceptions that maybe [he] wouldn't be as successful at the full range compared to these other people coming in." (A228, Lacey Dep., p. 19.) With such a light burden at this stage of the proceedings, OPM convinced the District Court of its reasons for not hiring Maxwell for the LAS position in Annuity Processing.

This Court similarly finds no record evidence that age or gender was a factor in the failure to promote Maxwell. Indeed, almost half of those hired were over forty years old at the time. Specific to the issue of gender discrimination, the OPM has stressed that while 51 of the 66 candidates forwarded to the interview panel as "best qualified" were female, 78–80% of the workforce is female. In the Retirement Operations Center, there were eighty male employees and 267 females as of February 12, 2003. (Krepin Aff., p. 2.) In addition, the interview panel consisted of two females and one male. Thus, there is no record evidence that gender actually was a factor in the failure to promote Maxwell.

Nor does the Court find record evidence adequately suggesting inconsistency, contradictions, incoherencies, or improbabilities in the OPM's proffered reasons for not selecting Maxwell. We are well-aware that there will seldom be "smoking gun" evidence of an employer's discrimination. In cases like this one, where such direct evidence is unavailable, "this Court has found that the proper inquiry is whether evidence of inconsistencies and implausibilities in the employer's proffered reasons ... reasonably *could* support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence *necessarily* leads to the conclusion that the employer did act for discriminatory reasons." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir.1993) (citations omitted). Mindful that such a finding "need not be the necessary conclusion, but only a possible one," *id.* at 640, the Court nonetheless cannot find the type of inconsistencies in this case that a fact finder *could* use to find that the employer's explanation was pretextual. While Maxwell has stated that he helped to train some of the individuals awarded the LAS position in Annuity Processing, he simply has "not succeeded in throwing enough doubt on any of those explanations so that a rational fact finder could reject it." *Fuentes*, 32 F.3d at 766.

## V.

Therefore, we will affirm the decision of the District Court granting summary judgment.