NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2606
_____

SHEILA R. WARFIELD,

Appellant

v.

SEPTA; LORRAINE MCKENZIE

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-10-cv-03023)
District Judge:  Honorable Stewart Dalzell
_____

Submitted Under Third Circuit LAR 34.1(a)
January 23, 2012
_____

Before:  AMBRO, CHAGARES and HARDIMAN, Circuit Judges

(Opinion filed:  February 6, 2012)
_____

OPINION
_____

AMBRO, Circuit Judge

Plaintiff-appellant Sheila Warfield sued Defendants Southeastern Pennsylvania

Transportation Authority ("SEPTA") and Lorraine McKenzie.  She alleges race and sex

discrimination, as well as retaliation, under Title VII of the Civil Rights Act of 1964 (as

amended by the Civil Rights Act of 1991), 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, and violation of her First and Fourteenth Amendment rights under 42 U.S.C. § 1983. The District Court granted summary judgment to the Defendants, and Warfield appealed. We affirm.[1]

## I.    BACKGROUND

Because we write solely for the parties, we recite only the facts necessary to our decision. Warfield is an African-American female who began working at SEPTA as an Equal Employment Opportunity/Employee Relations Specialist in July 2007. She primarily investigated internal allegations of discrimination and external complaints of discrimination made to the Pennsylvania Human Relations Commission ("PHRC") and the federal Equal Employment Opportunity Commission.

At the same time, SEPTA hired Thomas Comber, a white male, as an Employee Relations Manager, a position that was a grade above Warfield's. According to the position description and his deposition testimony, he was responsible for handling internal complaints between employees that did not involve allegations of discrimination, retaliation or harassment, and for consulting on Performance Improvement Plans ("PIPs"). He further testified that he only once handled an external complaint, and that was at a time when the department was shorthanded.

Both Warfield and Comber reported to McKenzie, an African-American female. Soon after Warfield began her employment, McKenzie expressed concerns to Warfield

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

about the latter's ability to meet the demands of her position. McKenzie requested that Warfield prepare daily logs of her work activities. Warfield complained to McKenzie that the logs were unnecessary and time-consuming. With McKenzie's approval, Warfield stopped preparing them shortly before her first fiscal year evaluation, in which McKenzie gave her an overall rating of "below expectations." McKenzie placed Warfield on a PIP for a period of 30 days. The PIP stated that if she failed to improve, Warfield might be terminated.

At the time she was placed on the PIP, Warfield informed McKenzie that she believed McKenzie was treating her differently than Comber. Warfield also wrote a formal response to the PIP, but did not mention that she believed that McKenzie was treating her differently than Comber or that she was being discriminated against based on her race or sex. Other than one discussion she had with McKenzie regarding a case she was working on that was related to one of Comber's cases, Warfield does not identify any other instances when she complained to McKenzie about being treated differently than Comber or being discriminated against based on her race or sex.

McKenzie prepared two progress reports regarding Warfield's PIP. These reports concluded that Warfield was not meeting the demands of her position. In March 2009, Warfield met with McKenzie as part of a mid-year performance evaluation, during which McKenzie advised Warfield that her performance remained below expectations. On April 13, 2009, McKenzie delivered to Warfield a notice of termination, which cited as the reasons for her termination Warfield's failure to perform her duties and to improve

3

performance as outlined in the PIP. Warfield immediately was placed on suspension pending imminent discharge.

Two days later (April 15), Warfield submitted to McKenzie a written response in which she stated that she had filed a complaint with the PHRC on April 1. SEPTA received service and copy of the complaint the next day, on April 16. Warfield officially was terminated the next month.

Warfield subsequently filed her action against SEPTA and McKenzie. In granting the Defendants summary judgment, the District Court made three holdings that Warfield contests on appeal. First, it determined that Comber was not "similarly situated" to Warfield, and thus held that she had failed to establish a *prima facie* case of discrimination based on her race or sex. Second, it held that Warfield had failed to show that she had engaged in a "protected activity" prior to filing her PHRC complaint, or a causal connection between the filing of the complaint and her official termination. It thus held that she also had failed to establish a *prima facie* case of retaliation. Finally, the Court ruled that Warfield had waived her claim of hostile work environment by raising it for the first time in her response to the motion for summary judgment.

## II.    ANALYSIS

We review a district court's grant of summary judgment *de novo*. *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* To defeat a motion for summary judgment, a non-moving party must present specific

4

facts that demonstrate a genuine issue for trial.  *Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.)*, 74 F.3d 420, 433 (3d Cir. 1996).  It may not "rest upon mere allegations, general denials or . . . vague statements . . . ."  *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991), *cert. denied*, 112 S. Ct. 376 (1991).

Race and Sex Discrimination

Warfield's claims of race and sex discrimination are governed by the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2]  *See Jones v. Sch. Dist. of Penn.*, 198 F.3d 403, 410 (3d Cir. 1999).   In order to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of her protected class were treated more favorably or that the circumstances of her termination give rise to an inference of discrimination.  *Id.* at 410-11.  If a plaintiff establishes a *prima facie* case of discrimination, the employer must offer a legitimate, non-discriminatory reason for the adverse employment action.  *Id.* at 410.  If the employer meets this burden, then the plaintiff must prove by a preponderance of the evidence that the employer's reason merely was a pretext for discrimination.  *Id.*

In their motion for summary judgment, SEPTA and McKenzie conceded that Warfield had established the first three factors of a *prima facie* case of discrimination.

---

[2] Pennsylvania courts have interpreted the PHRA interchangeably with Title VII.  *See Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).  The same analysis also is used in § 1981 and § 1983 cases.  *See McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 n.3 (3d Cir. 1994).

The question, then, is whether she has introduced evidence that similarly situated persons not of her protected class were treated more favorably or that the circumstances of her termination give rise to an inference of discrimination.

Warfield identifies Comber as her comparator, stating that they performed similar duties and that he had performance issues similar to hers and was not disciplined. Though "similarly situated" does not mean "identically situated," a plaintiff must demonstrate that she is similar to the alleged comparator in relevant respects. *See Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003). Warfield offers only her own unsupported statements that Comber's position did not differ from hers despite his divergent title, grade level, stated responsibilities, and deposition testimony regarding his duties. Indeed, during her deposition, Warfield acknowledged that she did not really know what Comber's position fully entailed. The District Court further noted that even if Warfield and Comber had the same responsibilities, because Comber did not exhibit performance problems similar to Warfield's, they were not "similarly situated."

In addition to identifying "similarly situated" individuals, a plaintiff must demonstrate that these individuals were treated more favorably. *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998). The focus of this determination is "on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Id.* at 647. Warfield was given an unfavorable performance evaluation, placed on a PIP, and ultimately terminated based on her alleged performance problems. She again offers no evidence beyond her own unsupported assertions that Comber's work

6

product displayed the same deficiencies as alleged of her own. In this context, Comber was not "similarly situated" to Warfield.

Moreover, Warfield has not presented any other evidence that the circumstances of her termination give rise to an inference of discrimination. She identifies examples of disparate treatment outside her alleged performance issues, claiming that McKenzie subjected her to excessive monitoring and scrutiny, as evidenced by McKenzie's request that Warfield prepare daily logs of her work activities, that McKenzie yelled at and belittled her, and that McKenzie required her to wear business suits while allowing Comber to dress more casually. These allegations do not imply discrimination. Warfield thus has failed to offer evidence establishing a *prima facie* case of discrimination based on her race and sex.[3]

Retaliation

We examine Warfield's retaliation claim under the same burden-shifting analysis. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she was engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *See id.* As with

---

[3] As noted, the District Court further concluded that even if Warfield had established a *prima facie* case of discrimination, the record demonstrates that SEPTA terminated Warfield based solely on her performance issues, which the Court determined was a legitimate, non-discriminatory reason for the adverse employment action. It also concluded that Warfield had not established that SEPTA's reason for this action was pretextual. Because we hold that Warfield did not offer evidence sufficient to establish a *prima facie* case of discrimination, we need not address arguments regarding the remaining steps of the burden-shifting framework.

7

discrimination claims, if a plaintiff establishes a *prima facie* case, the employer must show a legitimate, non-discriminatory reason for the adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). The burden then shifts back to the plaintiff to demonstrate that the offered reason is pretextual. *Id.*

The District Court determined that Warfield did not establish that she had engaged in a "protected activity" prior to filing her PHRC complaint. We agree. Protected conduct includes the filing of formal charges of discrimination and informal protests of discriminatory activities, such as making complaints to management. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). It, however, does not include very generalized complaints about unfair treatment. At a minimum, the conduct must convey a protest of discriminatory practices such that it will be understood that a complaint about an unlawful employment practice has been advanced. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).

Other than the filing of her PHRC complaint, Warfield argues that she engaged in protected conduct when she repeatedly informed McKenzie that she believed McKenzie was treating her differently than Comber. Warfield specifically identifies their discussions of the daily logs, one of her assignments that was similar to one of Comber's, and her placement on the PIP.[4] She, however, concedes that she never told McKenzie that she believed McKenzie was retaliating against her based on her race or sex.

---

[4] Warfield also states that she complained to Comber that she believed McKenzie was treating him differently than her, and that, after she was placed on the PIP, she met with SEPTA's Senior Director of Human Resources to complain that she believed McKenzie was treating her unfairly.

Warfield nonetheless tries to bolster her argument by stating that, when she complained to McKenzie, the latter told her that no one would believe her because McKenzie also was a black female, that McKenzie must have perceived that Warfield's complaint was based on race and sex because Comber was the only white male in the department, and that Warfield later gave an article to McKenzie that discussed same-race and same-sex discrimination. Warfield's generalized complaints to McKenzie (and others) were not sufficient to place McKenzie or SEPTA on notice that Warfield was alleging that McKenzie was engaging in an unlawful employment practice. Likewise, Warfield's other unsupported allegations do not present evidence sufficient to establish a genuine issue of material fact that she engaged in "protected conduct." The only protected conduct Warfield established is the filing of her PHRC complaint.[5]

Warfield fails to offer any evidence demonstrating a causal connection between the filing of the complaint and her official termination in retaliation. Knowledge of an employee's protected conduct is an essential element of establishing a causal connection. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Though Warfield filed her complaint on April 1, 2009, she did not inform SEPTA of the complaint until April 15, two days after she received the notice of termination. Warfield does not present any evidence that SEPTA knew of the complaint prior to April 15. She instead argues that, because she was not terminated officially until May 2009, the complaint was a factor

---

[5] Because we conclude that Warfield did not engage in "protected conduct" prior to filing her PHRC complaint, we need not address arguments regarding whether Warfield can establish a causal connection between this conduct and the identified adverse employment actions.

9

in SEPTA's decision to issue its final termination letter. Yet Warfield again fails to identify any evidence contradicting the clear message of the initial notice of termination—that she was to be discharged. SEPTA decided to terminate her before it was aware that she had filed a complaint with the PHRC. There is no evidence of a causal connection between the complaint and her termination. Warfield thus has failed to offer evidence establishing a *prima facie* case of retaliation.[6]

Hostile Work Environment

In her response to the Defendants' motion for summary judgment, Warfield argued that she was subjected to a hostile work environment based on McKenzie's preferential treatment of Comber, excessive monitoring of Warfield, and other acts that Warfield believed affected her negatively. A plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment. *See Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641-42 (3d Cir. 1993). Because Warfield did not allege that she was subjected to a hostile work environment in her complaint and did not move to amend the complaint to make that claim, she has waived it.

\* \* \* \* \*

For these reasons, we affirm.

---

[6] The District Court also concluded that even if Warfield had been able to establish a *prima facie* showing of retaliation, the Defendants had provided a non-discriminatory reason for her termination, which Warfield failed to demonstrate was pre-textual. Because we hold that Warfield has failed to offer evidence establishing a *prima facie* case of retaliation, we need not address arguments regarding the remaining steps of the burden-shifting framework.

10